No. 31,425

THE BOSTON SAFE DEPOSIT AND TRUST COMPANY, as Administrator of the Estate of Charles F. Bright, Deceased, for itself and others hereinafter named and similarly situated, *Plaintiff*, v. T. B. BOYD, as Treasurer of the State of Kansas (J. J. RHODES, substituted), and WALTER PLEASANT, FRED HORN and C. C. COGSWELL, as members of the State Tax Commission of the State of Kansas, *Defendants*.

(32 P. 2d 218.)

Opinion filed May 5, 1934.

*M. A. Gorrill, Henry H. Asher*, both of Lawrence, and *J. D. M. Hamilton*, of Topeka, for the plaintiff.

*Roland Boynton*, attorney-general, *Everett E. Steerman*, assistant attorney-general, and *W. B. Crowther*, of Topeka, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in mandamus brought by the administrator of the estate of Charles F. Bright, deceased, to compel the state tax commission to cancel and abate an inheritance tax levied against the Bright estate, which was paid under protest. Bright, it appears, was a resident of Massachusetts, and had never resided in Kansas, who, at his death, was the owner of thirty-seven shares of the corporate stock of the Atchison, Topeka and Santa Fe Railway Company of the value of $3,385. The certificates evidencing ownership were not and have never been physically located in Kansas. The state tax commission levied and

exacted the payment of a tax, and to avoid a lien attaching to the stock or the payment of interest on the amount charged, plaintiff involuntarily, under duress and with protest, paid the same on September 8, 1930.

It is alleged that the supreme court of the United States in 1932 decided in a similar case brought before it from the state of Maine, that a state may not impose an inheritance tax on the transfer of corporate stock of a domestic corporation owned by a nonresident decedent. Some stock is subject to inheritance tax only in the state of decedent's domicile. (*First National Bank v. Maine*, 284 U. S. 312.)

Defendants concede that under this authority the tax involved here was invalid. It is further conceded that having been paid involuntarily and under protest to the state treasurer, the state treasurer did not turn the tax money into the state treasury, but is holding it as an official stakeholder. That he set it aside in what is designated as "The Protested Inheritance Tax Fund."

It is conceded further that a demand was made on March 22, 1932, upon the state tax commission for the cancellation and abatement of the tax and for an order for the refund and repayment of the same, and that a like demand was made upon Boyd, the state treasurer. It is further admitted that a proceeding was instituted for a writ of mandamus on the 24th day of May, 1933. The defendants allege that they have not at any time since the payment of the tax money herein had any control over such tax, and do not now have any authority to direct the disposition thereof. The defendants then plead the statute of limitations, claiming that it is barred by the statute and also by laches. Whether the claim is barred is the principal question submitted for a judgment declaring whether the claim is barred.

Since the decision of the United States supreme court in *First National Bank v. Maine,* supra, which was under a like statute and under similar circumstances, our court had occasion to consider the question in *Kittredge v. Boyd,* 136 Kan. 691, 18 P. 2d 563, and 137 Kan. 241, 20 P. 2d 811. It was there decided that the tax paid as here, under protest, to the effect (1) that an action by mandamus for the return of the money illegally exacted when timely begun is a proper remedy; (2) that the state tax commission and the state treasurer, the official stakeholder, were proper parties in the action; and (3) that the tax exacted and paid under protest was illegal,

following the decision in *Bank v. Maine,* supra; and (4) that the tax money sought to be refunded was involuntarily paid; and (5) that the state constitutional provision that no money can be drawn from the treasury except in pursuance of a specific appropriation made by law, has no bearing on moneys like that of plaintiff which the state treasurer holds *ad interim,* but which do not belong to the state.

It has been held that the action for a refund must be timely brought, and the question is what is the time within which the action must be brought, or rather what limitation the law applies under the facts in this case, and in a number of others similarly situated, which have been consolidated with this case for the determination of the question.

It appears that there is no specific time limitation prescribed by the legislature for the refunding of an inheritance tax illegally collected as in some of the other states. Attention is called to R. S. 19-308, which provides a limitation upon accounts due from a county, and providing that they must be presented within two years after they have accrued. In *Sinclair v. Eddy,* 87 Kan. 45, 123 Pac. 873, it was held that this provision might be applied where persons had paid personal taxes under protest claiming the assessment was illegal. The claim for recovery was not presented within two years, and it was held to be barred, but obviously the rule has no application to the repayment of inheritance taxes illegally exacted. In the first place the action is not against the county, and it is not a party to the action, and a provision for the presentation of accounts or claims for refunding of general taxes is generally held not applicable to inheritance taxes. (61 C. J. 746.)

Reference is made to the provisions of R. S. 79-1517, but it is plain that it has no application to the cases under consideration. That section has already been interpreted in *Frick v. Inheritance Tax Comm.,* post, p. 572 (this day decided), in which it is made clear that the section has no application to the cases in hand.

Looking then to the general limitations for the bringing of actions, the two-year limitation in R. S. 60-306 is referred to by the defendants, but this clause is not applicable. The action is not one for trespass upon real property, nor for detaining or injuring personal property. It is not an action for injury to the rights of another, not arising on contract, and is not an action for relief on the ground of

fraud, and hence the two-year statute has no application to the case at bar.

The three-year statute is: "An action upon contract, not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty." We think the case falls fairly within that limitation. The claim of plaintiff is one of a contractual nature and falls within the category of an implied contract. In *Burrows v. Johntz*, 57 Kan. 778, 48 Pac. 27, a claim against a trust fund in the hands of an assignee under a general assignment was a written contract, but it was said:

"He never entered into any contract, either written or verbal, with reference to the fund, but at most his contract was one which the law would imply, to deliver to the rightful owner; and a claim under a contract of this kind is barred in three years under the second clause of section 18 of the code of civil procedure." (p. 782.)

If the money of one person comes into the hands of another, the latter has no right conscientiously to keep it, as in such cases the law implies a promise that he will pay it to the recognized owner. *Kelly v. Miami County*, 85 Kan. 39, 116 Pac. 477, involved the right to money paid under a contract of an officer with the board of county commissioners as to some misconduct of the officer, and it was there said:

"Whatever right the plaintiff had to a recovery grew out of the legal obligation to restore it and his remedy was upon the county's implied contract to do so. (Citing cases.) The three-year statute therefore applied." (p. 48.)

The same doctrine is recognized in *Salthouse v. McPherson County*, 115 Kan. 668, 224 Pac. 70. In *Pacific Coal & Lum. Co. v. Pierce County*, 133 Wash. 278, the question was before the supreme court of Washington as to the limitation under statutes somewhat similar to ours, and it was held an action to recover excess payment of taxes illegally imposed, was one arising on an implied contract, not in writing, and that the three-year limitation applied, and further that case was followed with approval in *Corwin Investment Co. v. White*, 166 Wash. 195, the court saying as to the limitation that:

"An action against a county to recover void taxes paid under protest arises upon an implied contract not in writing subject to the three-year statute of limitations." (Syl. ¶ 2.)

In 61 C. J. 999 and 1000, it is said that the right to recovery on such claims is barred unless brought within the prescribed time in

a statute pertaining to it, but in the absence of such a statute is barred by the same lapse of time which would limit an action for money had and received between private parties. It is said:

"It has been held that a statute prescribing a limit on the time for suing to recover taxes paid under protest is not a statute of limitations which affects the remedy merely, but prescribes a condition on which the right to sue depends. Generally limitation runs from the time the taxes are paid, and is not postponed until the legality of the tax has been judicially determined, or the taxpayer discovers that the assessments, levy, and collection were illegal."

See, also, 3 Cooley on Taxation, 4th ed., p. 2590, § 1300, which is to the effect that such an action is one in assumpsit, for money had and received, and does not attach until the money is paid over and being then based upon the receipt of the money and not upon illegalities which preceded it.

The right of the defendants to plead and raise the defense of the statute of limitations is questioned. It is said that the suit is not against the state, the money does not belong to the state, and it is making no claim. The officers raising the question, it is said, are not entitled to the fund and have no right to the defense. The money illegally exacted and protested was placed in the hands of an official party who has been sued for the restoration of the money paid, and he has, we think, sufficient interest in it to raise the question of a right of recovery. Any defense open to a private party is available to the defendant officer.

It may be stated, too, that only one who has protested the illegal tax has the right of recovery, and as it is conceded the tax is illegal, and the defendants had no right to collect or hold it, the plaintiff, and likewise others similarly situated, are entitled to recover in an action that is timely brought. The facts in plaintiff's case show the exaction, protest and involuntary payment, and the action was brought within three years, the statute of limitations held to be applicable. All other plaintiffs in cases consolidated with this one who are shown to have made payments involuntarily and with protest, and who brought their actions within three years from the time of payment, are entitled to judgment for the amounts paid. Payments, of course, are to be made out of the funds illegally collected and set aside by the official stakeholder as "the protested inheritance tax fund."

A question is presented as to the source from which funds adjudged to be recoverable shall be paid. They are to be paid from

the funds received and placed in the protested inheritance tax fund, which it appears were deposited in certain banks. It appears now that there are 164 estates which paid the illegal tax under protest. Seventy-eight of these have been abated by the state tax commission. In the remaining eighty-six estates no abatement was asked in thirty-eight cases, leaving forty-eight cases upon which abatement was asked and a demand refused on the ground that the statute of limitations had barred a recovery. Only $53,364.98 of the fund which was deposited in the Topeka State Bank is now available for immediate payment of any and all claims adjudged against the defendant. It appears that $183,204.41 was deposited in the Fidelity State & Savings Bank of Emporia, an institution now closed, and that part will not be available until certain legal procedure and legal questions can be carried out. Counsel indicated that they were willing that the $53,364.98 now available shall be paid out upon the basis of equitable principles and ordered paid in that proportion that the claim of each bears to the whole amount, to be distributed, giving to each his just portion of the funds available, and the balance due to each to be paid when the balance of the fund is available. This appears to be a just principle and was the procedure adopted in *State, ex rel., v. Davis,* 114 Kan. 270, 217 Pac. 905. There the fund provided by a vote of the people proved to be insufficient to meet the demands under the bonus claims of soldiers. Instead of a struggle for a preference on various grounds, it was ruled that a proportionate allowance should be paid out of the available funds. That will be the order in this case.

Judgment is rendered for plaintiff, as well as to others similarly situated, in accordance with the views expressed in the foregoing opinion, and the court will retain jurisdiction of the case to determine any controversy that may arise as to the amount recoverable by each claimant, and also in the proportional distribution of the payment of each claimant out of funds now available for present payments.