# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## CITY OF CHARLOTTESVILLE V. MARKS' SHOWS, INCORPORATED.

March 2, 1942.

Record No. 2500.

Present, All the Justices.

The opinion states the case.

*H. W. Walsh* and *Lyttleton Waddell,* for the plaintiff in error.

*M. J. Fulton* and *Robert E. Taylor,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In January, 1941, Marks' Shows, Incorporated, which we will sometimes refer to as the plaintiff, filed in the court below a notice of motion for judgment against the city of Charlottesville seeking to recover certain license fees which the city had assessed and collected from it for the years 1935 through 1940, both inclusive, under appropriate ordinances, for the privilege of exhibiting its carnival shows and amusements during the respective years in Albemarle county, but within one mile of the corporate limits of the city. It was alleged that the ordinances which authorized the assessment and collection of licenses on exhibitions beyond the corporate limits of the city were unconstitutional and void, that the exaction of the licenses was illegal, and that the sums had been paid under protest in order to escape prosecution, and should be refunded to the plaintiff.

By appropriate pleadings the city asserted, among others, these defenses:

(1) The licenses are valid because the ordinances under which they were exacted are not revenue measures but regulatory measures enacted under the city's police power pursuant to authority delegated to it by Code, section 3006.

(2) Even if the licenses were illegally assessed and collected, a proceeding under section 414 of the Tax Code is the only method whereby they may be recovered.

(3) Even if section 414 of the Tax Code does not furnish the exclusive remedy for the recovery of these licenses alleged to have been illegally assessed and collected, yet the present action at law cannot be maintained because the licenses were paid voluntarily and not under compulsion.

(4) An action at law to recover the licenses paid for the years 1935, 1936 and 1937 is barred by the three-year statute of limitations. Code, section 5810.

In reply to the last point, the plaintiff contended that the five-year statute of limitations (Code, section 5818) applied.

At the trial it developed that the plaintiff had filed a proceeding under section 414 of the Tax Code for the correction of the assessment of the taxes and the recovery of the amounts paid. Upon motion of counsel for the city the plaintiff was required to elect whether it would pursue that remedy or the present action at law. It chose the latter.

All matters of law and fact were submitted to the court without a jury, and these pertinent facts were developed:

Marks' Shows, Incorporated, is a Virginia corporation engaged in the business of conducting an itinerant carnival. During the years from 1935 to 1940, both inclusive, it exhibited its shows in Albemarle county just beyond the corporate limits of the city of Charlottesville. In each of the years the city had enacted, as a part of its general license tax laws, ordinances requiring annual license taxes of "all persons, firms or corporations" engaged in certain specified "occupations, professions, or businesses," including "shows and circuses." These ordinances provided for license fees on performances or exhibitions "within the corporate limits of the city." They likewise provided that, "On every circus,

menagerie, tent show, or other like exhibition or performance outside of the city limits but within one mile of the city limits, there shall be a license of $50 per day, *which license is charged for the purpose of affording police protection*." (Italics supplied.)

John H. Marks, the president of the plaintiff corporation, testified that before the exhibition of his show in Albemarle county in 1935, he went to the office of the commissioner of revenue for the city and was there informed that under the ordinance just mentioned he would be required to pay to the city a license fee of $50 per day before being allowed to exhibit his show in the county and within one mile of the corporate limits of the city. After a protest, the nature and extent of which will be presently discussed, he paid the city a license tax of $450 and $4.50 fees for performances during the month of May in that year. Subsequently he paid to the city license fees amounting to $606 for the year 1936, $202 for the year 1937, $303 for the year 1938, $303 for the year 1939, and $303 for the year 1940, or a total of $2,171.50, which is the amount sought to be recovered in the present proceeding. These payments were in addition to licenses required by the county of Albemarle.

The city officials testified that during each of the periods in which the plaintiff's shows were being exhibited adjacent to the city, the city detailed eight or more of its regular policemen for the purpose of keeping order at the performances, particularly during the evenings. The chief of police testified that while there were some few arrests, the presence of the officers tended to "keep down trouble" at or near the shows. The sheriff of Albemarle county likewise furnished from two to four men to aid in the preservation of law and order during the exhibitions.

In addition to their regular salaries the city policemen who were detailed for service at the carnival were paid extra wages. These amounted to $809.24 from 1935 to 1940, both inclusive, during which the city collected from the plaintiff license fees amounting to $2,171.50, as has been stated.

At the conclusion of the hearing the lower court held

that the plaintiff's claim for the recovery of taxes for the years 1935, 1936 and 1937, was barred by the three-year statute of limitations (Code, section 5810), but that the city should refund to the plaintiff the difference between the total of the license fees collected for the years 1938, 1939 and 1940, amounting to $909, and the actual expense incurred by the city in furnishing police protection during the performances for these years, amounting to $316.75, or the net amount of $592.25.

To review the judgment carrying into effect this ruling the city has obtained this writ of error, claiming that it should not have been required to refund any amount to the plaintiff corporation.

On its part the Marks' Shows, Incorporated, has filed a cross-assignment of error claiming that the five-year statute of limitations (Code, section 5818), applies to its action, and that the city should have been required to refund the licenses collected for the years 1936 to 1940, both inclusive.

We have already summarized the defenses asserted by the city. It makes before us the same contentions which involve these main questions:

(1) Were the ordinances under which the licenses were assessed and collected valid? If so, the city should not be required to refund any part of the sums collected.

(2) If the ordinances were invalid and the taxes were illegally collected, can they be recovered in the present proceeding?

Code, section 3006, as amended by Acts 1930, ch. 395, p. 831, provides that (except as to certain towns with which we are not here concerned): "The jurisdiction of the corporate authorities of each town or city, in criminal matters, and for imposing and collecting a license tax on all shows, performances, and exhibitions, shall extend one mile beyond the corporate limits of such town or city; * * *."

In *Robinson* v. *Norfolk*, 108 Va. 14, 60 S. E. 762, 128 Am. St. Rep. 934, 15 L. R. A. (N. S.) 294, this court held that this statutue was unconstitutional insofar as it authorized the levy by a city of a license tax upon a circus exhibition beyond its corporate limits for the sole purpose of

raising revenue to defray the general expenses of the city government. Consequently, it was held that a general tax ordinance enacted pursuant to this statute and levying a tax for revenue purposes alone upon a circus exhibition beyond the corporate limits of the city of Norfolk was invalid.

The city of Charlottesville does not question the soundness of that holding. It contends, however, that Code, section 3006, extends the police power of the city one mile beyond its corporate limits for the purpose of licensing and regulating "all shows, performances, and exhibitions," and that the ordinances under review were enacted under this authority and for this purpose. The validity of such a license under the police power of the city was expressly left open in *Robinson* v. *Norfolk, supra* (108 Va., at page 18).

It is true, as contended by the city, that a municipal corporation may be authorized by the legislature to exercise its licensing power for police purposes within a reasonable distance outside of its municipal limits. 38 Am. Jur., Municipal Corporations, section 358, p. 48; 37 C. J., Licenses, section 23, p. 181; 4 Cooley on Taxation, 4th Ed., section 1793, p. 3524; 3 McQuillin, Municipal Corporations, 2d Ed., section 1095; *Standard Chemical, etc., Co.* v. *Troy*, 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522; *White* v. *Decatur*, 225 Ala. 646, 144 So. 873, 86 A. L. R. 914; *Chicago Packing, etc., Co.* v. *Chicago*, 88 Ill. 221, 30 Am. Rep. 545. See also, *Light* v. *Danville*, 168 Va. 181, 205, 190 S. E. 276, 285.

Whether Code, section 3006, fairly interpreted, delegates to a municipality the necessary police power to regulate, and the incidental power to exact a license fee of, "all shows, performances, and exhibitions" within one mile of its corporate limits, we need not here decide, for, in our opinion, the ordinances under review undertake to impose, under the guise of a police regulation, a mere revenue tax such as was condemned in *Robinson* v. *Norfolk, supra*.

The contention of the city that the ordinances in question are police regulatory measures as distinguished from revenue measures is based largely on the declaration in the ordinances that the license fees were "charged for the pur-

pose of affording police protection." But the character of such an enactment is determined not by the denomination given to it by the legislative body, but rather from its substance and its real purpose. Cooley on Taxation, 4th Ed., section 1785; 33 Am. Jur., Licenses, section 19, p. 340.

In determining whether an exaction is a revenue tax or a regulatory license under the police power, these principles are helpful:

(1) If revenue is the primary purpose and regulation is merely incidental, the imposition is a tax. If regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax. Cooley on Taxation, 4th Ed., section 1784, p. 3513.

(2) Where the fee is imposed for the purpose of regulation and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power. But where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax. 33 Am. Jur., Licenses, section 19, p. 341; *Chambers* v. *Higgins*, 169 Va. 345, 349, 193 S. E. 531, 532; *Phoebus* v. *Manhattan Social Club*, 105 Va. 144, 147, 52 S. E. 839, 8 Ann. Cas. 667; *Schmidt* v. *Indianapolis*, 168 Ind. 631, 80 N. E. 632, 634, 120 Am. St. Rep. 385, 14 L. R. A. (N. S.) 787; *Chicago* v. *R. & X. Restaurant*, 369 Ill. 65, 15 N. E. (2d) 725, 117 A. L. R. 1313.

(3) The exacted charge must bear some reasonable relation to the additional burdens imposed upon the municipality and the necessary expenses involved in the police supervision. 3 McQuillin, Municipal Corporations, 2d Ed., section 1091, p. 461; *American Baking Co.* v. *Wilmington*, 370 Ill. 400, 19 N. E. 172, 174.

(4) Where the imposition is laid upon persons or property under a general taxing ordinance, and the proceeds are paid into the general treasury and no part thereof is devoted to the expense incident to carrying out the provisions of the ordinance, the conclusion is that the exaction is laid for revenue purposes alone, unless the contrary is made

clearly to appear. *Robinson* v. *Norfolk, supra* (108 Va., at page 20).

Tested by these principles we have no doubt that the imposition here is a revenue measure sought to be imposed under the guise of a police regulation. The ordinances provide for no regulation or inspection of the plaintiff's exhibitions. They impose no condition in addition to the payment of the prescribed sum. The charge exacted for each year is from two to three times the amount of expense incurred in furnishing extra policemen for that period.

Moreover, the stipulated facts show that each ordinance "under which the taxes in question were levied was a part of the general license tax ordinance of the city of Charlottesville," that "the taxes collected by the city of Charlottesville from the plaintiff were paid into the general fund of the city," and that the amounts paid for furnishing extra policemen were paid out of such general fund. Aside from the bare statement in the ordinance that the "license is charged for the purpose of affording police protection," there is nothing to distinguish this license from the other licenses imposed for the purpose of raising the general revenues of the city. Such a denomination cannot override the main purpose of the ordinance which is to obtain revenue. Cooley on Taxation, 4th Ed., section 1785; 33 Am. Jur., Licenses, section 19, p. 340.

Having determined that the imposition of the taxes was invalid, we come to the question as to whether they may be recovered in the present action.

At common law taxes illegally levied and paid under compulsion may be recovered in an action of *assumpsit* for money had and received. Cooley on Taxation, 4th Ed., section 1300; 26 R. C. L., Taxation, section 410, p. 454; *Brown, etc., Co.* v. *Greenhow*, 80 Va. 118, 122; *Stone* v. *White*, 301 U. S. 532, 534, 57 S. Ct. 851, 852, 81 L. Ed. 1265. The present proceeding is brought on that theory.

The statute of limitations applicable to an action in *assumpsit* to recover taxes illegally exacted and paid under compulsion is the same as that applicable to a suit to recover

money had and received under an implied promise to pay. 61 C. J., Taxation, section 1277, pp. 999, 1000; *Boston Safe Deposit, etc., Co. v. Boyd,* 139 Kan. 411, 32 P. (2d) 218, 92 A. L. R. 1355. In Virginia the limitation is three years. Code, section 5810; *Webb v. United States Fidelity, etc., Co.,* 165 Va. 388, 393, 182 S. E. 557, 558, and authorities there cited.

[■■] The cause of action accrues at the time the taxes are paid. Cooley on Taxation, 4th Ed., section 1304; *Boston Safe Deposit, etc., Co. v. Boyd, supra.*

■■ Applying these principles, we think the trial court correctly held that the action to recover the taxes for the years 1935, 1936 and 1937 was barred.

Section 414 of the Tax Code (Code 1919, sections 2249, 2389, 2390; Acts 1920, ch. 238, p. 341; Acts 1924, ch. 406, p. 589; Acts 1926, ch. 353, p. 644; Acts 1936, ch. 135, p. 253), permits a taxpayer to invoke the jurisdiction of the proper court for the purpose of correcting an illegal assessment of a local license tax and compelling the refund of the amount of taxes paid under such assessment. Under this section the petition must be filed within one year from the 31st day of December of the year in which the assessment is made. *Richmond v. Eubank, ante,* p. 70, 18 S. E. (2d) 397.

■■ The city contends that this section affords the only remedy whereby license taxes illegally levied and collected by a locality may be recovered. In our opinion this contention is unsound. The statute contains no express provision to this effect, nor do we find in it any basis for the conclusion that such was its implied purpose. "A statute prescribing a new remedy for an existing right should never be construed to abolish a pre-existing remedy in the absence of express words or necessary implication."* *Levy & Co. v. Davis,* 115 Va. 814, 821, 80 S. E. 791. See also, 1 Am. Jur., Actions, section 12, p. 411; 1 C. J. S., Actions, section 6, p. 976.

*Compare Tax Code, section 416, prohibiting suits to restrain the assessment or collection of taxes.

But the right to recover, in an action at law, taxes which have been illegally levied and collected has its limitations. In an unbroken line of decisions this court has held that in the absence of statute taxes illegally assessed and paid voluntarily and not under compulsion cannot be recovered in an action at law. *Richmond* v. *Judah*, 5 Leigh (32 Va.) 305; *Phoebus* v. *Manhattan Social Club, supra* (105 Va., at pages 148, 149); *Virginia Brewing Co.* v. *Commonwealth*, 113 Va. 145, 147, 73 S. E. 454; *Barrow* v. *Prince Edward County*, 121 Va. 1, 92 S. E. 910; *Putnam* v. *Ford*, 155 Va. 625, 636, 155 S. E. 823, 71 A. L. R. 1217; *Commonwealth* v. *Conner*, 162 Va. 406, 411, 174 S. E. 862.

In Cooley on Taxation, 4th Ed., section 1282, p. 2564, it is said: "Where voluntary payments are not recoverable, it is immaterial that the tax or assessment has been illegally laid, or even that the law under which it was laid was unconstitutional."

[ The holding that taxes illegally collected but voluntarily paid cannot be recovered is based upon the principle that every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it. Cooley on Taxation, 4th Ed., section 1282, pp. 2564-5.

In *Phoebus* v. *Manhattan Social Club, supra* (105 Va., at page 149), we said: "All payments are presumed to be voluntary until the contrary is made to appear. * * * The mere declaration of the plaintiff when it made payment, that it was made under 'protest' does not show that it was not voluntarily made." In that case at the time the payment was made the taxpayer declared to the recorder that the payment was being made "under protest," and the officer so noted on his records. Nevertheless, it was held that the tax could not be recovered.

In *Virginia Brewing Co.* v. *Commonwealth, supra*, a license tax was paid to avoid prosecution and in order that the licensee might proceed with his business. It was held

that this was a voluntary payment and that the tax paid, although illegally assessed, could not be recovered. We there quoted with approval (113 Va., at page 147) Burroughs on Taxation, p. 443, as follows: "Where the party, of his own motion, procures his license and pays the tax, if the tax be afterwards judicially decided to be illegal, he cannot recover. Such payment is not under compulsion, although the pursuit of the occupation, without the payment of the license tax, would subject the party to fine and imprisonment."

It is argued that this harsh doctrine should be modified if not abolished. The answer is that the legislature has given the taxpayer, under the various statutes for the correction of erroneous assessments (such as section 414 of the Tax Code, which is applicable here), a simple remedy for the recovery of taxes erroneously assessed and collected even though voluntarily paid. When the prescribed statutory procedure is followed, taxes illegally assessed and collected must be refunded to the taxpayer regardless of whether they have been paid voluntarily or under compulsion. *Hotel Richmond Corp.* v. *Commonwealth*, 118 Va. 607, 610, 88 S. E. 173; *Clifton Forge* v. *McDaniel*, 143 Va. 325, 327, 328, 130 S. E. 414.

When we examine the circumstances under which the taxes were paid in the present case we find that they were not paid under compulsion but were paid voluntarily.

Marks, the president of the plaintiff corporation, testified that prior to the exhibition of his show near the city of Charlottesville in 1935, he visited the office of the commissioner of revenue of the city and was informed that he would be required to pay a city license of $50 per day for the privilege of exhibiting his show in the county. He expressed his surprise at this requirement and asked, "If I don't pay what will happen", to which the commissioner replied, "If you don't pay it we are going to close you up and levy on all of your stuff." Thereupon he paid the required license, stating that it was "under protest." This is almost precisely what occurred in *Virginia Brewing Co.* v. *Commonwealth, supra.*

But that is not all. There is not a line of testimony in the

record that the plaintiff made any protest when paying the licenses for the subsequent years.

It was no doubt due to this situation that the trial court held that the plaintiff had "impliedly agreed with the city that the payment should be for necessary police expenses."

Since it clearly appears from the record that the taxes sought to be recovered by the plaintiff were voluntarily paid, none of them are recoverable in the present action at law.

The judgment complained of will be reversed and a final judgment will be here entered dismissing the plaintiff's notice of motion for judgment with costs.

*Reversed and final judgment.*