PRESENT:  All the Justices

KERRY ANN SHEEHY

v.  Record Nos. 190802 & 191089

RENEE WILLIAMS

OPINION BY
JUSTICE D. ARTHUR KELSEY
NOVEMBER 25, 2020

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James Clayton Lewis, Judge

The trial court in this case entered a civil judgment against Kerry Ann Sheehy based upon a finding that she had violated Code § 8.01-40.4 by disseminating images of Renee Williams in a manner prohibited by Code § 18.2-386.2.  Sheehy filed two appeals arguing that the judgment against her should be vacated.[1]

While these appeals were pending, the judgment amount was paid in full.  Seeking a dismissal of both appeals, Williams contends that the voluntary-payment doctrine moots Sheehy's appeals of the now fully satisfied judgment.  For the following reasons, we will retain jurisdiction over this appeal and temporarily remand the case to the trial court for factual findings on the voluntary-payment issue.  Upon receiving the trial court's findings, we will rule upon Williams's motion to dismiss.

I.

The trial court entered a final judgment against Sheehy on May 24, 2019, in the amount of $50,845.18.  Sheehy filed two notices of appeal, one before the entry of final judgment (April 23) and the other after the entry of final judgment (June 14).  *See supra* note 1; *infra* note 9.  Based upon proffers made by Williams on appeal, it appears that she has never filed any petition

---

[1] In Record No. 190802, Sheehy challenges the trial court's liability and damages findings, and in Record No. 191089, she seeks a vacatur of the court's award of attorney fees and costs to Williams.  We consolidated both appeals and address them together in this opinion.

seeking execution of the judgment (such as a writ of fieri facias or garnishment, *see* Code §§ 8.01-466, -511) or a petition in equity seeking the judicial sale of Sheehy's real property, *see* Code §§ 8.01-458, -462. *See* Mot. to Dismiss Appeal As Moot Ex. C, at 1-2 [hereinafter Mot. to Dismiss]. Nor does the record reflect that Sheehy ever sought a stay of the execution of the judgment by filing a suspending bond or irrevocable letter of credit pursuant to Code § 8.01-676.1(C).

In July 2020, Sheehy entered into a contract to sell real property. *See* Br. Opp'n Appellee's Mot. to Dismiss Appeal As Moot at 1 [hereinafter Br. Opp'n]. During a title search prior to closing, a title company discovered the judgment in this case . In order "to obtain clear title," the title company required the judgment lien to be satisfied. *Id.* The buyer's attorney, who appears to have been acting as the closing attorney, asked Williams's counsel for "payoff information." Mot. to Dismiss, *supra*, Ex. C, at 1. In response, Williams's counsel sent to the buyer's attorney a letter dated August 12, which stated that the balance due on the final judgment was $54,673.19. *Id.* Ex. A, at 1.

Williams's counsel received a check for that exact amount dated August 14 drawn on the escrow account of the buyer's attorney. The memo line on the check stated: "Judgment Payoff." *Id.* Ex. B, at 1. Attached to the check, Williams's counsel also received a copy of his earlier letter to the buyer's attorney with a handwritten circle around the amount of the balance due. *See id.* Williams's counsel proffers to us that Sheehy's initials appear next to the circled payoff amount, thereby indicating her knowledge of and consent to the payment. *See* Oral Argument Audio at 13:10 to 13:23. Williams's counsel also proffers that he thereafter filed, and the circuit court clerk entered, a satisfaction of judgment pursuant to Code §§ 8.01-453 to -454. *See* Oral Argument Audio at 18:45 to 19:05.

2

On brief, Sheehy's counsel does not present facts that directly contradict these factual representations. Instead, he maintains simply that the check was issued "on behalf of the Buyers" and "was not made by [Sheehy] or on her behalf." Br. Opp'n, *supra*, at 2. The apparent implication is that Sheehy did not authorize or agree to the payment. During oral argument, we asked for a clarification of Sheehy's position on this issue: "The check from [the closing attorney's] trust account says 'Judgment Payoff.' It is in the exact amount of the monetary judgment that you are appealing. Did your client authorize that payment to be made?" Oral Argument Audio at 29:35 to 29:49. Sheehy's counsel replied: "As I sit here today, I do not know that. I was not involved in that real estate transaction in any regard, nor made aware of it." *Id.* at 29:53 to 30:01.

## II.

The voluntary-payment doctrine has a rich history in Virginia law. The doctrine served as a check on causes of action "for money had and received" that arose out of the "indebitatus assumpsit" remedy recognized by English common law. Kent Sinclair, Sinclair on Virginia Remedies § 9-2, at 9-2 to -3 (5th ed. 2016). The premise of this doctrine was that, absent a showing of fraud or other misconduct, a claimant could not demand that a court *return* money to him that he had *voluntarily* paid to another. The doctrine has been applied in a variety of contexts, including a voluntary "[p]ayment of a judgment." *Id.* § 9-2, at 9-5 (footnote omitted).[2] "The rule of voluntariness flows from the vigilance maxim." *Id.* "Every man is supposed to know the law; if one voluntarily makes a payment which *the law would not compel him to make*,

---

[2] *See, e.g.*, *Williams v. Consolvo*, 237 Va. 608, 615-16 (1989) (holding that mistaken payments to a noteholder as the result of an improperly indexed deed of trust were voluntary and not recoverable); *City of Charlottesville v. Marks' Shows, Inc.*, 179 Va. 321, 332-34 (1942) (holding that, in the absence of a statute to the contrary, taxes paid voluntarily cannot be recovered even if the taxes are later deemed to have been illegally assessed or collected).

he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it." *Id.* (emphasis added). As Judge Burks has explained:

> In order to render the payment compulsory so as to allow a suit to recover it back, the compulsion must have been illegal, unjust or oppressive, and usually the payment must have been made to emancipate the personal property of the payer from a duress illegally imposed upon it by the party to whom the money is paid, or to prevent a seizure by a party armed with apparent authority to seize the property.

Martin P. Burks, Common Law and Statutory Pleading and Practice § 226, at 386 (T. Munford Boyd ed., 4th ed. 1952).[3]

In the appellate context, the voluntary-payment doctrine recognizes that at some point, reviewing courts should declare litigation to be at an end when the litigants themselves — by their own voluntary actions — have effectively ended it. Despite the clarity of the concept, the line-drawing necessary to apply it has proven to be elusive. There appear to be as many approaches to this topic as there are courts. *See generally* E.H. Schopler, Annotation, *Defeated Party's Payment or Satisfaction of, or Other Compliance with, Civil Judgment as Barring His Right to Appeal*, 39 A.L.R.2d 153 (1955).

In Virginia, however, we have drawn a bright line: "Voluntary payment of a judgment deprives the payor of the right of appeal." *Citizens Bank & Tr. Co. v. Crewe Factory Sales Corp.*, 254 Va. 355, 355 (1997) (citing *Carlucci v. Duck's Real Est., Inc.*, 220 Va. 164, 166

---

[3] A payor's suit against a payee for restitution should be distinguished from a common-law claim against a "co-obligor" for contribution after payment to the obligee on a joint debt. *See McComb v. McComb*, 226 Va. 271, 281 (1983) (focusing on whether the payment was "made under a legal and fixed obligation" (emphasis and citation omitted)). *See generally* John L. Costello, Virginia Remedies § 12.11[1], at 12-36 (4th ed. 2011) ("Among the common law rights of contribution is the right of the joint maker of a note to contribution from co-makers after paying it off."); Sinclair, *supra*, § 11-1, at 11-1 ("If multiple persons are liable in the same way for shares of an obligation, one of them *who is compelled to pay more than his share* is entitled to contribution from the rest." (emphasis added)).

(1979)). The antonym of voluntary — involuntary — does not mean inconvenient. If "the law would not compel him to make" the payment, Sinclair, *supra*, § 9-2, at 9-5, the party making the payment has made it voluntarily. Two cases, *Citizens Bank & Trust Co.* and *Carlucci*, bracket the Virginia rule for voluntariness in the appellate context.

In *Citizens Bank & Trust Co.*, a jury entered a monetary judgment against a defendant who later appealed. While the appeal was pending, the defendant forwarded to the plaintiff "a check in the full amount of the judgment." *Citizens Bank & Trust Co.*, 254 Va. at 355. The defendant had made this payment "before any proceedings were instituted to execute on the judgment" and had done so "in satisfaction of the trial court's judgment." *Id.* We dismissed the appeal because of the defendant's "[v]oluntary payment." *Id.* We cited an earlier case, *Carlucci*, to provide contrast. In that case, the defendant paid the judgment only after "the issuance by the plaintiff of an execution on its judgment and the filing by it of a suggestion in garnishment." *Carlucci*, 220 Va. at 166. "The payment of a judgment *under such circumstances* is not such a voluntary payment as causes a loss of the right of appeal by the judgment debtor." *Id.* (emphasis added). Together, *Citizens Bank & Trust Co.* and *Carlucci* demonstrate that, absent a showing of fraud or other tortious conduct by a judgment creditor, a payment of a civil judgment for a fixed monetary sum made by or on behalf of a judgment debtor with her knowledge and consent becomes involuntary only when the payment is made after the judgment creditor has initiated execution proceedings.[4]

---

[4] A civil judgment for a fixed monetary sum must be distinguished from a domestic-relations support order. *See generally* Margaret F. Brinig, Virginia Domestic Relations Handbook § 21-31, at 289 (3d ed. 1996) ("A decree for alimony is different from an ordinary judgment or debt."); Sinclair, *supra*, § 56-3[C], at 56-9 to -10 (distinguishing civil monetary judgments from spousal support orders when discussing the effect of voluntary payment after a judgment is overturned on appeal). A support award is a self-executing order, and noncompliance is punishable by contempt of court. *See* Doug Rendleman, Enforcement of

In the present case, Sheehy does not claim that Williams initiated any execution-of-judgment proceedings to seize Sheehy's assets, to garnish her wages, to summons her for debtor's interrogatories, or to initiate the judicial sale of her real property.[5] The only thing that Williams's counsel apparently did was reply to an uninvited request seeking "payoff information" for the judgment in order to close a private sales transaction. *See* Mot. to Dismiss, *supra*, Ex. C, at 1-2. The buyer's attorney forwarded to Williams's counsel a check for the payoff amount dated two days later with the notation "Judgment Payoff" and with what appear to be handwritten initials next to the circled amount of the judgment balance on the attached letter. *See id.* Ex. B, at 1.[6]

Williams argues that this payment was not coerced by a pending execution-of-judgment proceeding. According to Williams, the payment was nothing more than a voluntary payment made by a seller seeking to convey clean title to a buyer. A well-recognized Virginia practice treatise on real estate closings explains that

> the purchaser must require that [the judgment] be satisfied of record prior to closing or that it be paid off at closing. The closing attorney should obtain the payoff amount from the judgment lienholder and oversee the seller's satisfaction of the lien. The attorney should also verify prior to closing that the lien has in fact

Judgments and Liens in Virginia § 7.1, at 7-1 to -2 (3d ed. 2014). A civil judgment for a fixed monetary sum is not self-executing and not enforceable through the court's contempt powers. *See* W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 18.04[1], at 18-18 (5th ed. 2017) (observing that "the common law writ of imprisonment for debt (the capias ad satisfaciendum) was abolished").

[5] *See generally* Bryson, *supra* note 4, § 18.03[1], at 18-10 to -11 (noting that "[t]he basic remedy for an unpaid common law judgment is the writ of fieri facias," or a "writ of execution," which "lies to enforce a final judgment for a sum certain of money"); *id.* § 18.03[2], at 18-12 (observing that a judgment creditor may also begin garnishment proceedings to recover a judgment debt); *id.* § 18.03[8], at 18-17 (stating that a judgment lien on real property "is enforced by a bill in equity to foreclose, praying that the land be sold to satisfy the judgment").

[6] At oral argument on appeal, Williams's counsel stated that the initials belong to Sheehy. *See* Oral Argument Audio at 13:10 to 13:23. We leave this factual issue for the trial court to resolve on remand.

been released of record.  If the judgment is to be paid off at closing, *the seller should tender an amount sufficient to pay the amount* of the principal plus all interest and costs, so that the closing attorney can oversee the satisfaction of the lien at the time the closing documents are recorded.

11 W. Wade Berryhill & Michael V. Hernandez, Virginia Practice Series: Real Estate Closings § 3:24, at 133-34 (2019-2020 ed.) (emphasis added).

Clearing a judgment lien from the land records is necessary to satisfy the seller's warranty of clean title.  *See* 5 Michael Allan Wolf, Powell on Real Property § 38.09, at 38-53 (2020).  Prior to making any payment to discharge the lien, it is common practice for a closing attorney to "first ask the seller about whether the lien is admitted as valid."  K.F. Boackle, Real Estate Closing Deskbook: A Lawyer's Reference Guide & State-By-State Summary 33 (2d ed. 2003).  It is the seller, after all, not the buyer, who typically makes the payment by suffering a corresponding dollar-for-dollar reduction in the net purchase price.  *See id.* at 33-34; Rendleman*, supra* note 4, § 5.1, at 5-3; Wolf, *supra*, § 38.09, at 38-53.[7]  The process of satisfying a judgment lien prior to closing, therefore, ordinarily presupposes the seller's express or implicit authorization.  It follows that an authorized payment of a lawful judgment lien in this context, absent the coercion of execution-of-judgment proceedings, would be considered a voluntary payment.[8]

---

[7] Paying off judgment liens creates not only practical implications for real estate closings but also ethical implications for the closing attorney.  *See, e.g.*, *Pioneer Nat'l Title Ins. v. Cranwell*, 235 Va. 597, 601-02 (1988); *Pickus v. Virginia State Bar*, 232 Va. 5, 9, 15 (1986). *See generally* Leslie A.T. Haley, *Ethical Considerations*, *in* 1 Real Estate Transactions in Virginia § 1.1705, at 40 (Neil S. Kessler & Paul H. Melnick eds., 5th ed. 2019).

[8] A different context, of course, may warrant a different rule.  For example, in *Vick v. Siegel*, a trustee on a deed of trust allegedly "threatened to sell" the entrusted property and held it hostage in a private sales transaction in order to coerce an "unlawful" payment of a trustee commission.  191 Va. 731, 734 (1951).  Accepting those allegations on review of a granted demurrer, we applied the common-law rule that "where one party has possession or control of the property of another, and refuses to surrender it to the control and use of the owner, except

III.

Sheehy, however, claims on appeal that the payment was issued "on behalf of the Buyers" and was "not made by [Sheehy] or on her behalf." Br. Opp'n, *supra*, at 2. This assertion suggests not only that Sheehy did not make the payment voluntarily but also that she did not make the payment at all. Sheehy's appellate counsel, when directly asked, expressly disclaimed any knowledge of Sheehy authorizing the payment. *See* Oral Argument Audio at 29:53 to 30:01. Because the circumstances and attendant inferences in support of Williams's motion to dismiss arose during the pendency of this appeal, we have no factual findings from the trial court on any of these issues. We are limited to proffers of counsel that remain untested by the adversarial process.

It seems prudent, therefore, for us to exercise our authority under Rule 1:1B(b), which states that we may, "in [our] discretion, issue a temporary remand of [a] matter to the circuit court for the purpose of making findings of fact" necessary for deciding a motion to dismiss a pending appeal. We thus remand this matter to the trial court for the sole purpose of making specific factual findings on the following questions:

1. Was the buyer's attorney acting as the closing attorney for this transaction?

2. Did Sheehy expressly or impliedly authorize (personally or through an agent or attorney) the buyer's attorney to issue the payoff check?

3. What do the purchase agreement and closing documents say about the source of funds for paying off the judgment lien and on whose behalf the funds will be paid?

---

upon compliance with an *unlawful demand*, a contract made by the owner under such circumstances to emancipate the property is to be regarded as made under compulsion and duress." *Id.* at 734-35 (emphasis added) (quoting *Harris v. Cary*, 112 Va. 362, 368-69 (1911)). Given the allegations in *Vick* that the trustee demanded an "unlawful" payment and "perpetrated a fraud" on the alleged debtor, we held that his coercive wrongdoing, if proven, would render any such payment "involuntary," *id.* at 734-36.

4. Did Sheehy review the payoff letter, circle the payoff amount, and sign her initials next to the amount?

5. Did the payoff check reduce the net purchase price that the buyer owed to Sheehy?

6. Did Sheehy contest or otherwise object to the buyer's attorney issuing the payoff check to Williams's counsel?

7. Did Williams file, and did the circuit court clerk enter, a satisfaction of judgment? If so, did Sheehy receive notice of and contest or otherwise object to the entry of the satisfaction of judgment?

8. Did Sheehy obtain Williams's oral or written agreement to accept the payment without prejudice to Sheehy's ability to continue to challenge the judgment on appeal?

We direct the trial court to certify its findings of fact on these questions and to supplement the record accordingly. Upon remand, the parties are directed to consult with each other in an effort to stipulate to factual matters that are not genuinely in dispute. Pursuant to Rule 1:1B(b), we will hold this appeal in abeyance pending receipt of the trial court's certified findings and the supplemental record.[9]

*Remanded.*

---

[9] We deny Williams's additional motion to dismiss arguing that Sheehy's appeal in Record No. 190802 was prematurely filed and that, as a result, Sheehy's appeal in Record No. 191089 was incomplete and did not comply with Rule 5:17(c). Under Rule 5:9(a), "[a] notice of appeal filed after the court announces a decision or ruling — but before the entry of such judgment or order — is treated as filed on the date of and after the entry." Sheehy filed her first notice of appeal after the trial court had issued a written order that had "granted judgment" on liability, damages, and injunctive relief. *See* J.A. at 249. Sheehy filed a "supplemental" notice of appeal in Record No. 191089 after the court had entered a final order addressing attorney fees, costs, and post-judgment interest. *See id.* at 278. We see no basis for dismissing either of these consolidated appeals on the procedural grounds presented by Williams.