## Richmond

County Board of Supervisors of Fairfax County, Et. Al. v.
American Trailer Company, Inc.

December 3, 1951.

Record No. 3818.

Present, All the Justices.

The opinion states the case.

*Hugh B. Marsh* and *James Keith,* for the plaintiffs in error.

*Chadwick & Garnett,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from a declaratory judgment, Code, § 8-578, holding invalid the Trailer Park Ordinance of Fairfax county.

The ordinance, as adopted in 1943 and amended in 1944, recites that it was enacted pursuant to the provisions of chapters 256 and 443 of the Acts of 1942. It provided that the operator of a trailer camp should first obtain a certificate from the County Health Department, to be issued only after compliance with detailed requirements with respect to location, water supply, sewage disposal and other regulations; and should also obtain a permit from the board of supervisors, to be issued upon proof that the applicant was a proper person and had complied with all regulations and restrictions "set up in any County ordinance affecting the same." Each day's violation of the ordinance was made a misdemeanor, punishable by fine.

The ordinance defined a trailer park or camp as being a tract of land on which is located one or more trailers for use as living quarters, and a trailer lot as being a unit of land used or intended to be used by one trailer, and to have a minimum width of 30 feet and a minimum depth of 50 feet.

Section 5 imposed a license tax of $25 a year to cover from one to eight trailer lots, and $5 a lot for two-thirds of the number of lots over eight. The Trailer Company, appellee, obtained licenses and paid this tax for 1947 and 1948.

By amendments in 1948 to section 5, effective January 1, 1949, there was imposed a license tax of $50 per year per trailer lot, used or intended to be used as such.

The Trailer Company owns and operates two trailer parks in Fairfax county, one called Temple Trailer Village, containing 322 trailer lots, and the other called Oak Grove Trailer Court,

containing 55 lots. For 1949 the license tax assessed against Temple under amended section 5 was $16,100 and against Oak Grove $2,750. The company refused to pay this license tax on the ground that the ordinance was invalid.

The court below sustained this contention, holding that the amendments to section 5 of the ordinance were not authorized by chapter 256, and that chapter 443 was unconstitutional. This appeal by the Board challenges the validity of these holdings.

The Board contends that chapter 256, Acts 1942, page 378, as amended by chapter 308, Acts 1946, page 518, authorized an ordinance to raise revenue as well as to regulate trailer camps. It concedes that if the acts authorized only a regulatory ordinance, the amount of the tax must have a reasonable relation to the cost of enforcing it. *Charlottesville* v. *Marks' Shows,* 179 Va. 321, 329, 18 S. E. (2d) 890, 895. The Trailer Company insists, and the court below held, that it was regulatory only and that the license tax bore no relation to the cost of enforcement.

Chapter 256, as enacted in 1942, in section 1 authorized the board of supervisors in any county in the State to adopt appropriate ordinances requiring a license to be obtained by and imposing a license tax upon the operator of a trailer camp, prescribing the conditions under which the license might be obtained, its duration, and the tax to be paid therefor, the amount of which could be based upon the maximum number of trailers to be accommodated at any one time, and providing penalties for violations. Section 2 defined a trailer and a trailer camp.

Chapter 308, Acts 1946, page 518, in effect when the ordinance was amended in 1948, was entitled ''An ACT to amend and re-enact Section 1 of Chapter 256 of the Acts of Assembly of 1942, approved March 18, 1942, the section and chapter authorizing the governing bodies of counties to regulate trailer camps and provide penalties for violations.'' By the amendment the board of supervisors of any county was authorized ''as herein defined to regulate by ordinances'' the location and operation of trailer camps. It was provided that such ordinances may require a license to be obtained and impose a license tax, prescribe the period for which the license shall run, with lower charges for portions of a year, and may prescribe the tax to be paid, which ''may be based upon the maximum number of trailers which are permitted by such license to be parked or placed or accommo-

dated at such camp at any one time." As a condition to the issuance of the license and operation of the camp, the board may prescribe the location, the size of the lots, the water supply, sewerage and garbage disposal facilities to be maintained, not in conflict with the regulations of the State Board of Health; and may prescribe safety measures for the heating facilities and other measures reasonably necessary "to protect the health, safety, and welfare of the people of the county and the occupants of such trailer camps." Violations were made a misdemeanor, punishable by fine.

Clearly we think this was only a regulatory act and authorized only a regulatory ordinance. The title of the act, as noted, states its purpose. The body of the act emphasizes that its purpose is to authorize ordinances "to regulate" the location and operation of trailer camps, "to protect the health, safety, and welfare" of the public. The tax permitted is a tax upon the license so authorized. There is nothing in the title or in the body of the act to suggest that a revenue measure was intended. The object of an act is required to be expressed in its title. Constitution of Virginia, § 52. The object expressed in this title is regulation and the body of the act repeats that its purpose is regulation. What is authorized by an act should be germane to the object expressed in its title. *Commonwealth* v. *Dodson,* 176 Va. 281, 305, 11 S. E. (2d) 120, 131, and cases cited. It is wholly inconsistent with the language of the title and of the act itself to say that in addition to its expressed object to regulate, it was intended also to provide a revenue measure for general county purposes.

*Robinson* v. *Norfolk,* 108 Va. 14, 60 S. E. 762, 128 Am. St. Rep. 934, 15 L. R. A. (N.S.) 294, involved the right of the city to collect a license tax from a circus exhibiting outside but within one mile of the city limits, as provided by a section of its general tax ordinance. The right was denied on the ground that the tax was levied not in the exercise of police power but for the purpose of raising revenue and the city could not impose the tax on property outside of its limits. The opinion quotes from *North Hudson County Ry. Co.* v. *Hoboken,* 41 N. J. L. 71: "The distinction between the power to license as a police regulation and the same power as a revenue measure, is of the utmost importance. If granted with a view to revenue, the amount of the tax, if not limited by the charter, is in the discretion of the authorities;

if given as a police power it must be exercised as a means of regulation only, and cannot be used as a source of revenue." 108 Va. at p. 14, 60 S. E. at p. 764.

In *Charlottesvllle* v. *Marks' Shows, supra,* the city levied against a show exhibiting outside of its limits a license of $50 a day, which the ordinance recited was for the purpose of affording police protection. It was held that while a municipality might be authorized by the legislature to exercise its licensing power for police purposes for a reasonable distance outside of its limits, this ordinance in spite of its stated purpose was a revenue measure which the city could not enforce. Principles for determining whether an exaction is a revenue tax or a regulatory license under the police power are stated, including this: "If revenue is the primary purpose and regulation is merely incidental, the imposition is a tax. If regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax." 179 Va. at p. 329, 18 S. E. (2d) 894. See also, *Chambers* v. *Higgins,* 169 Va. 345, 193 S. E. 531; *Anne Arundel County* v. *English,* 182 Md. 514, 35 A. (2d) 135, 150 A. L. R. 842; Cooley on Taxation, 4th ed., Vol. 4, §§ 1792, 1798, 1809.

If it is manifest that the amount imposed is out of proportion to the expenses involved, the ordinance will generally be regarded as a revenue measure and void as a regulation under the police power. 53 C. J. S., Licenses, § 19 a, p. 516. However, if the business is harmful or one which the State may prohibit, the license fee may be such as to effect a reasonable restraint on or practically a prohibition of it. 53 C. J. S., *supra,* at p. 519; 33 Am Jur., Licenses, § 45, p. 368; *United States* v. *Sanchez,* 340 U. S. 42, 71 S. Ct. 108, 95 L. ed. 47. The business here involved does not fall within that classification.

It is also true, as argued by appellants, that a license tax may be imposed both for revenue and to regulate, *Flax* v. *Richmond,* 189 Va. 273, 283, 52 S. E. (2d) 250, 254; but authority to adopt an ordinance to regulate is not authority to adopt an ordinance for general revenue purposes.

The court below held that the Trailer Company had sustained the burden of proof that the amount of the tax bears no relation to the cost of regulation. That conclusion is well supported by the record. As the court found, the evidence shows no consideration given to the cost of regulation in arriving at the amount of

the tax. There is no claim that additional personnel were employed or were necessary for supervision or enforcement. The parks were not regularly patrolled. The police visited the camps only occasionally and for some special purpose. Health inspectors visited the camps once a year. The tax collected was not deposited to any special account, and it is clear that no effort was made to relate the amount of the tax to the cost of enforcing the regulatory measures provided for by the ordinance. We therefore sustain the holding of the trial court that the amended ordinance is invalid because not authorized by chapter 256 as amended by chapter 308. The cases of *Commonwealth* v. *Whiting Oil Company*, 167 Va. 73, 187 S. E. 498; *McKenney* v. *City Council*, 147 Va. 157, 136 S. E. 588 and *Standard Oil Company* v. *Fredericksburg*, 105 Va. 82, 52 S. E. 817, relied on by appellants, involved only licenses for revenue and do not aid the appellants.

Chapter 443, Acts 1942, page 708, the other act recited in the ordinance as authorizing it, was held by the court below to be invalid as being a special or local law prohibited by the Constitution.

That chapter forbids the operation of a trailer camp or park "in any county adjoining any county in this State having a density of population in excess of one thousand per square mile, according to the last preceding United States census," until the operator first obtains a permit and license from the governing board, or from an officer designated by it, to be obtained upon proof that the applicant is a proper person, and has complied with all regulations and restrictions "set up in any county ordinance affecting the same." The act defines trailer, trailer camp and trailer lot; makes it unlawful to park any trailer on any highway or other public place, except in a licensed trailer park, and except one trailer may be parked in an improved enclosed garage or accessory building, or on any lot of land if not used for living quarters or business purposes.

Section 4 provides that the act shall not exempt any operator from paying "any license or tax imposed by existing law," and the board is authorized to impose on the operator an annual county license of not less than $5 nor more than $100 per trailer lot used or intended to be used. Section 5 makes violations a misdemeanor punishable by fine.

Appellants suggest in their brief the possibility that this

chapter was repealed by chapter 308 of the 1946 Acts, *supra,* and that chapter 255, Acts 1948, page 490 "is a strong indication of legislative recognition of this fact." Chapter 255 is a general law providing for the regulation of trailer camps in the interest of public health, and does not deal with local licensing or taxing. It now appears as sections 35-65 ff. of the 1950 Code. Furthermore, section 35-64 of the 1950 Code provides that chapter 443 of the 1942 Acts "is hereby continued in effect." See also chapter 329, Acts 1950, page 601, effective January 1, 1951, adding section 35-62.1 to the Code.

It is conceded that chapter 443 now applies only to Fairfax county by force of its language limiting its application to a county adjoining a county having a population density in excess of one thousand per square mile. Only Arlington county fits that description and only Fairfax county adjoins Arlington.*

Section 63 of the Constitution forbids the General Assembly to enact "any local, special or private law" in 20 enumerated cases, including "For the assessment and collection of taxes, * * *."

Section 64 of the Constitution provides that in all cases enumerated in section 63 "and in every other case which, in its judgment, may be provided for by general laws, the General Assembly shall enact general laws."

Section 65 of the Constitution provides that the General Assembly may "by general laws," confer upon the boards of supervisors of counties such powers of local and special legislation as it may deem expedient, not inconsistent with the limitations contained in the Constitution.

■ The fact that the act applies only to Fairfax county would not necessarily brand it as a special or local law. It is still a general law if it applies to all who are similarly situated "and to all parts of the State where like conditions exist. Laws may be made to apply to a class only, and that class may be in point of fact a small one, provided the classification itself be a reasonable and not an arbitrary one, and the law be made to apply to all of the persons belonging to the class without distinction." *Ex parte Settle,* 114 Va. 715, 718-9, 77 S. E. 496, 497.

Constitutional prohibitions against special legislation do not

* Elizabeth City county is the only other county that now even approaches a population density of one thousand to the square mile. According to the 1950 census, its population is 55,028, and according to the table at page 1679 of Acts 1950, its area is 56 square miles.

prohibit classification. But the classification "must be natural and reasonable, and appropriate to the occasion." An arbitrary separation of persons, places or things of the same general class, so that some of them will and others of them will not be affected by the law, "is of the essence of special legislation." Classification by population must not be merely a circuitous and disingenuous means of designating and legislating for particular localities. It must be fairly said that classification and not merely designation was the purpose. *Martin* v. *Commonwealth*, 126 Va. 603, 617, 102 S. E. 77, 80, 81-2, 724.

That case approved, as perhaps the most satisfactory to be found anywhere, this definition of a special law taken from *Budd* v. *Hancock*, 66 N. J. L. 133, 48 A. 1023: "A law is 'special' in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or things from those upon which, but for such separation, it would operate." 126 Va. at p. 610, 102 S. E. at p. 79. And again, "The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes." 126 Va. at p. 612, 102 S. E. at p. 80.

These principles have been repeated and approved a number of times by this court, the most recent instance being in *Joyner* v. *Centre Motor Co.*, 192 Va. 627, 633, 66 S. E. (2d) 469, 472, decided in September of this year, in which the reminder was added that we must still, in each case, determine whether the act in fact makes "an arbitrary separation," which must, in the nature of things, depend upon the person and subject of the particular act and the circumstances and conditions surrounding its passage.

Applying these principles, we have held constitutional, upon the facts of the particular case: An act providing for the contraction of the corporate limits of towns located partly in one county and partly in another, *Falls Church* v. *County Board*, 166 Va. 192, 184 S. E. 459; an act giving the same powers possessed by city and town councils to the boards of supervisors of counties adjoining a city of 125,000 or more, and of counties adjoining such a county which itself has a population density of 500 or more to the square mile, *Gandy* v. *Elizabeth City County*, 179 Va. 340, 19 S. E. (2d) 97; and an act prohibiting a city from annexing a part of a county unless there remained in the county

as much as 60 square miles, *Newport News* v. *Elizabeth City County,* 189 Va. 825, 55 S. E. (2d) 56.

On the other hand, we have held to be special or local, and therefore unconstitutional: An act providing that the trial justice of Carroll county should be elected by the people instead of being appointed by the judge as in other counties. *Quesinberry* v. *Hull,* 159 Va. 270, 165 S. E. 382; an act providing compensation for supervisors in 15 named counties different from that provided for those in other counties classified according to population, *Shelton* v. *Sydnor,* 126 Va. 625, 102 S. E. 83; an act providing for a change of venue for prohibition officers, *Farmer* v. *Christian,* 154 Va. 48, 152 S. E. 382; and an act excepting cities having a population of not less than 125,000 and not more than 150,000 from the operation of the act giving the right to proceed by a motion before civil and police justices and others, *Shulman Co.* v. *Sawyer,* 167 Va. 386, 189 S. E. 344.

We are clearly of opinion that chapter 443, Acts 1942, under review, falls within the type of legislation involved in the last named cases and is purely a special or local act.

By the passage of chapter 256, Acts 1942, amended by chapter 308, Acts 1946, *supra,* the General Assembly provided by general law for the regulation of trailer camps by local ordinances in the counties of the State, permitting a license and license tax based upon the maximum number of trailers accommodated at such camps, under which the amount of the tax must be related to the cost of enforcement. It thereby necessarily declared the subject to be one which "may be provided for by general laws." Constitution, § 64.

But by chapter 443, Acts 1942, it provided different and special powers for Fairfax county, in effect excepting it from the operation of the general law, separating it from the other counties of the State—not by name, it is true, but just as definitely by description—and according to it special privileges not available to other counties. One of those exclusive privileges is authority to levy a tax up to $100 per trailer lot. The Constitution says this shall not be done by special law, but by general law. The 99 other counties of the State are limited by the general law, chapters 256 and 308, *supra,* to a regulatory license and a tax related to the cost of its enforcement, to be imposed on a different basis from that provided for Fairfax county in chapter 443.

What reason may be found for this "separation"? None is suggested, by the statute or otherwise, other than that Fairfax county adjoins a county with a population density in excess of one thousand per square mile. Does that fact present a problem in respect to trailer camps peculiar to Fairfax county and not existing in other counties excluded from the operation of the act? Nothing in the act suggests that to be the case and nothing in this record or out of it has indicated why that should be true.

As the trial court in its well-reasoned opinion pointed out, the need for living quarters close to work in industrial and population centers has resulted in the establishment of trailer camps located as near by as space is available. These trailer camps present problems with respect to schools, health and safety involving expense to the localities. But these problems arise wherever trailer camps are located. The problem may be more acute in counties adjoining densely populated areas, but only because that condition results in more or larger trailer camps. And if that be true, what reason could be conceived for excluding counties adjoining cities like Richmond, Norfolk, Roanoke, and others in which the density of population is far in excess of one thousand to the square mile? If Arlington county should become a city, then chapter 443 would not apply to Fairfax county, although its trailer camp problem might be greater than it is now.

It is our duty, as has been frequently said, to indulge every reasonable doubt in favor of the constitutionality of a legislative act and to hold it valid if any state of facts can be reasonably conceived that would sustain it; but none has been shown with respect to this act and none suggested to prevent its being purely an "arbitrary separation." Very clearly it excludes from its operation counties in similar situations and to which, but for the limitation in the act, it would apply. By the established testing principles, it is a special or local law forbidden by the sections of the Constitution referred to.

We affirm the judgment of the trial court.

*Affirmed.*