# City of Virginia Beach, Virginia

## v.

# Virginia Restaurant Association, Inc., et al.

Record No. 821638

March 7, 1986

Present: All the Justices

Mark E. Slaughter, Assistant City Attorney (J. Dale Bimson, City Attorney, on briefs), for appellant.

John W. Drescher (Jonathan L. Hauser; Pickett, Lyle, Siegel, Drescher & Croshaw, P.C., on brief), for appellees.

Amicus Curiae: Virginia Municipal League (Howard W. Dobbins; William A. Young Jr.; Wallerstein, Goode & Dobbins, on brief), for appellant.

The City of Chesapeake, Virginia (Ronald S. Hallman, City Attorney; Linda W. Groome, Assistant City Attorney; Terry M. Burt, Assistant City Attorney, on brief), for appellant.

THOMAS, J., delivered the opinion of the Court.

This appeal concerns the power of a city to impose a sales tax upon "meals" where that term is defined to include alcoholic beverages.

Since June 1, 1976, the City of Virginia Beach, by ordinance, has imposed a 3% retail sales tax on all food sold in restaurants in the city. The ordinance defined "food" to include "any and all refreshments and nourishment, liquid or otherwise." Virginia Beach City Code § 35-136. Effective June 1, 1981, the tax was increased to 6%.

On July 29, 1981, the Virginia Restaurant Association, Inc., Butrick Corp., trading as Three Ships Inn, and Bay Restaurant, Inc., trading as Blue Pete's Restaurant (hereinafter sometimes collectively referred to as "Restaurant Association"), filed a petition for declaratory judgment which asked, in part, that the trial court declare void the retail food tax as that tax applied to the sale of alcoholic beverages by restaurants. In addition, the Restaurant Association asked the court to enjoin the City from collecting the tax on alcoholic beverage sales.

The trial court ruled in favor of the Restaurant Association. It held that Code § 4-96 prohibits a city from imposing any tax on

alcoholic beverages; as a result, it concluded that the City's "tax on food served in or from any restaurant cannot be applied to retail sales of alcoholic beverages." The rationale for the trial court's ruling was that Code § 4-96 precludes a locality from "regulating or prohibiting" the sale of alcoholic beverages, that "regulation" is a broad term which includes taxation, and therefore, that the prohibition of "regulation" is the same as the prohibition of "taxation." As an additional basis for its opinion, the trial court concluded that Code § 58-441.49, which allows localities to impose a retail sales tax on transient meals, was not intended to include alcoholic beverages in the term "meals."

In our opinion, the trial court erred in its construction of Code § 4-96. Because the issues were narrowed during oral argument, we need only address the issue concerning Code § 4-96.*

The facts were stipulated. Most pertinent to our disposition of this appeal is the fact that the parties agreed the "purpose of the City of Virginia Beach's tax on the purchase of food from restaurants is solely to raise revenue for the City."

The City argues and the Restaurant Association agrees that the issue here is not whether the City can impose the tax but instead whether the City is prohibited from imposing the tax. In this regard, the City submits that any limitation on its taxing power ought to be clear and express, rather than implied. The City argues further that since Code § 4-96 does not clearly and expressly prohibit the tax in question, the tax should be upheld. We find the City's analysis persuasive.

Two important principles of statutory construction support the City's approach. First, where an ordinance and a statute are said to be in conflict, it is the duty of the courts to harmonize them, if reasonably possible, so that they can stand together. *Lou-*

---

* During oral argument, counsel for the Restaurant Association conceded that Code § 58-441.49 is sufficient to permit the City to impose the tax on alcoholic beverages absent some prohibition. The Restaurant Association admitted that the power to impose the tax in question was granted in Code § 58-441, where the meal tax appears. Counsel then said that,

"In this particular case, unless the meal tax is expressly prohibited as to the retail sale of alcoholic beverages, then the City of Virginia Beach would be justified in imposing that tax. It is contended here as it was in the trial court that section 4-96 of the Virginia Code . . . is such a proscription which prevents the City of Virginia Beach [from imposing the tax]."

In light of this concession, we will not address the question whether Code § 58-441.49 authorizes the tax.

*doun County* v. *Pumphrey*, 221 Va. 205, 207, 269 S.E.2d 361, 362 (1980); *King* v. *County of Arlington*, 195 Va. 1084, 1091, 81 S.E.2d 587, 591 (1954). Second, a court will not hold that a legislative enactment preempts the entire field unless the court can find in the statute a manifest intent on the part of the legislature to preempt the field. *See City of Norfolk* v. *Tiny House*, 222 Va. 414, 281 S.E.2d 836 (1981); *Maritime Union* v. *City of Norfolk*, 202 Va. 672, 119 S.E.2d 307 (1961).

The central focus of this appeal is Code § 4-96, which reads in pertinent part as follows:

> § 4-96. *Local ordinances or resolutions regulating alcoholic beverages.*—No county, city or town shall, except as otherwise provided in § 4-38 or § 4-97, pass or adopt any ordinance or resolution regulating or prohibiting the manufacture, bottling, possession, sale, distribution, handling, transportation, drinking, use, advertising or dispensing of alcoholic beverages in Virginia.

Though the trial court relied on this provision in ruling against the City, we find it significant that Code § 4-96 nowhere mentions taxation. Neither the introductory heading nor the text says anything about taxation. Consequently, it is not apparent on the face of the statute that it is in direct, irreconcilable conflict with the City's ordinance. As pointed out above, this situation gives rise to a duty on the part of this Court to harmonize Code § 4-96 and the City's ordinance. If we can find a way for both provisions to stand, we must do so.

One obvious approach to harmonizing the statute and the ordinance is to read the word "regulation" in such a manner that it does not include taxation. The trial court was persuaded, however, that as used in the statute, "regulation" was meant to encompass taxation. In reaching that conclusion, the trial court relied on a line of federal commerce clause cases together with this Court's opinion in *Southern Ry. Co.* v. *Russell*, 133 Va. 292, 112 S.E. 700 (1922). The trial court pointed out that in *Southern Ry. Co.* we gave the word "regulate" an expansive definition. In our view, neither *Southern Ry. Co.* nor the federal commerce clause cases support the definition of "regulation" adopted by the trial court.

*Southern Ry. Co.* was not a tax case. It was a suit for damages to a carload of watermelons. The issue in *Southern Ry. Co.* con-

cerned an evidentiary question. Thus, the trial court's suggestion that when the legislature used the word "regulating" in Code § 4-96, it did so in the shadow of our definition of "regulation" in *Southern Ry. Co.* is unsound. We do not think it reasonable, absent a clear indication in the statute, that the legislature would, in promulgating the ABC Act, be aware of or concerned with a statement made by this Court in a totally unrelated context.

■ Nor do we think it reasonable to suggest that the legislature incorporated into the ABC Act definitions articulated by federal case law. Absent a clear legislative directive to the contrary, we will not presume such a result. No such clear directive can be found in Code § 4-96.

■ The meaning of "regulation," as used in the ABC Act, is best determined by more direct approaches. The City points out that in a series of opinions, this Court has recognized a distinction between regulation and taxation. *See County Bd. of Sup'rs* v. *Am. Trailer Co.*, 193 Va. 72, 68 S.E.2d 115 (1951); *Charlottesville* v. *Marks' Shows*, 179 Va. 321, 18 S.E.2d 890 (1942); *Robinson* v. *Norfolk*, 108 Va. 14, 60 S.E. 762 (1908). Those cases state, in essence, that regulation is based on the police power while taxation is based on the taxing power. Further, in deciding whether an act is regulation or taxation, we look to whether the measure raises general revenues or whether it imposes charges that are directly tied to the administration of the particular regulatory scheme that is sought to be imposed. Here, it was admitted that the enactment was solely to raise revenues for the City. Generally, in the past, such a measure has been considered a tax rather than a regulation.

■ The City also submits that from a commonsense standpoint the legislature is well aware of how to say taxation when it means taxation. Thus, the City argues, had the legislature intended to preclude localities from imposing a sales tax upon the retail sale of liquor as a part of a meal it would have said so. We agree. The word "tax" can be found in numerous places throughout the present and former provisions of the ABC Act. See for example Code §§ 4-15.1, 4-15.2, 4-15.3, 4-24, 4-33, 4-38, 4-40, 4-42, and 4-65. Given the frequent use of the word "tax" in other parts of the ABC Act, we find it significant that it was not used in Code § 4-96 where the legislature prohibits certain actions by localities.

■ Further, the trial court's opinion appears to be premised in part upon the view that the ABC Act preempts the field with re-

gard to matters touching upon or concerning alcoholic beverages. We rejected a similar argument in *City of Norfolk* v. *Tiny House*, 222 Va. 414, 281 S.E.2d 836 (1981), where Tiny House argued that because it had secured an ABC license it need not secure a city use permit for the location of its business. Tiny House argued that the use permit requirement intruded into a field under the exclusive control of the ABC Commission. We did not find preemption in *Tiny House*. Nor do we find preemption here. The ABC Act does not make manifest a legislative intent that no other enactments may touch upon alcoholic beverages in any way.

■ Finally, the Restaurant Association submits that its position finds support in the opinions of three different Attorneys General. While these opinions are entitled to due consideration, they are not binding on this Court. *Albemarle County* v. *Marshall, Clerk*, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975).

For all the foregoing reasons, we hold that Code § 4-96 does not prohibit the City's tax. Therefore, the judgment appealed from will be reversed and final judgment will be entered in favor of the City.

*Reversed and final judgment.*

COCHRAN, J., dissenting.

In a carefully drafted memorandum opinion, the trial judge analyzed the applicable law and concluded that the City of Virginia Beach is prohibited from imposing a tax on retail sales of alcoholic beverages in restaurants. Because I agree with the rationale and conclusion of the trial judge, I would affirm the judgment.

The Alcoholic Beverage Control Act, Acts 1934, c. 94, established a comprehensive statewide system for the regulation of all aspects of manufacture and sale of alcoholic beverages. The Act provided for taxation at the state level and authorized, within prescribed limits, issuance and taxation of licenses at the local level. The Act also provided for distribution to localities, on the basis of population, of certain net profits from sale of alcoholic beverages through the statewide system. Localities electing under the local option provisions of the Act not to permit the sale of alcoholic beverages within their borders nevertheless share in the distribution of net profits derived from sales throughout the state. With this significant compromise, which enables localities to exercise

with impunity their option to prohibit local sales, the Act came into existence to provide a centralized system of control.

The trial judge acknowledged that the charter of the City of Virginia Beach authorized it to impose the sales tax in question unless otherwise prohibited by law. But he concluded that Code § 4-96 prohibited imposition of the tax. Code § 4-96 provides:

> No county, city or town shall, except as otherwise provided in § 4-38 or § 4-97, pass or adopt any ordinance or resolution regulating or prohibiting the manufacture, bottling, possession, sale, distribution, handling, transportation, drinking, use, advertising or dispensing of alcoholic beverages in Virginia.

At the time this statute was enacted the meaning of "regulate" had been broadly enough defined to include taxation. *See Southern Ry. Co.* v. *Russell*, 133 Va. 292, 300, 112 S.E. 700, 703 (1922). Thus, the United States Supreme Court had long held that the constitutional power of Congress to "regulate" interstate commerce preempted the field and prevented states from imposing taxes on such commerce. *See Phila. Steamship Co.* v. *Pennsylvania*, 122 U.S. 326, 336 (1887).

The Act is a comprehensive scheme by which the General Assembly assumed complete control over the manufacture, sale, and use of alcoholic beverages in the state. The General Assembly removed from all others the power to regulate, by taxation or other means, the distribution of alcoholic beverages, except in two isolated instances. Code § 4-96 establishes two exceptions to the rule against local regulation of alcoholic beverages. First, Code § 4-38 authorizes localities to charge for local licenses under the Act, expressly permitting them to impose local wholesale, retail, or restaurant license taxes that "include alcoholic beverages in the base for measuring such local license taxes." Second, Code § 4-97 relates to local ordinances restricting hours of sale of alcoholic beverages.

The City contended in the court below and on appeal that former Code § 58-441.49, authorizing, *inter alia*, "local taxes on transient room rentals and meals," provided an additional exception to the prohibition of local regulation of alcoholic beverages by allowing a local sales tax on meals, including alcoholic beverages. Although the Restaurant Association may have abandoned in oral

argument its prior contention to the contrary and conceded that meals include alcoholic beverages, it is far from clear that the General Assembly intended the term "meals" to be so interpreted.

The Code defines "meals" as "an assortment of foods commonly ordered in bona fide, full service restaurants as principal meals of the day." Code § 4-98.1. In other sections, it distinguishes "food" from "alcoholic beverages," listing them as separate and distinct items. *See* Code §§ 4-98.2(a), 4-98.7. Thus, there is no reasonable basis for concluding that, as used in Code § 58-441.49, "meals" include alcoholic beverages.

Furthermore, as the trial court noted, even if Code § 58-441.49 could be construed to authorize a local sales tax on alcoholic beverages served as part of a meal, such a grant of authority would contravene the proscription of Code § 4-96 against local regulation. Because the General Assembly intended the Act to preempt local regulation of the distribution of alcoholic beverages, except in the specified cases enumerated in Code § 4-96, the City's sales tax on alcoholic beverages served in restaurants should not be allowed to stand.

COMPTON and RUSSELL, JJ., join in dissent.