# CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Water Authority

   v.

City of Falls Church

March 13, 2009

Case No. CL 2008-16114

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on the City's demurrer to the Water Authority's amended complaint. Having considered the pleadings and the written and oral arguments of counsel, the demurrer is overruled.

*Summary of Facts as Alleged in the Complaint*

This is a dispute over municipal water service in the northeastern part of Fairfax County. In 1959, the parties entered into a thirty-year agreement identifying exclusive service areas for provision of public water. The agreement permitted the City to provide water services for residents and businesses outside the City of Falls Church. The agreement established an exclusive service area for the City in the area of the County lying south and east of a line running (very roughly) north-northeast from the City of Fairfax to the Potomac River and lying to the north of a line running east from the

City of Fairfax to Arlington County. See Exhibit 1 to the complaint. While the agreement was in effect, the City developed a public water supply system capable of serving the entire area.

The agreement expired in 1989 and has not been renewed. Both parties currently provide water to businesses and residents in the area, although the Water Authority is not yet capable of providing water for the entire area. In addition to being the City's competitor, the Water Authority is also in some places its customer. The City runs its water service on a for-profit basis and charges about twice the rate charged by the Water Authority. The City regularly transfers large profits from the water service into their general fund and uses the funds to provide other services to the residents of the City. Although they are not currently doing so, in the past, they have charged County residents a higher rate than the rate they charge their own residents. They reserve the right to do so again in the future. About ninety percent of the City's customers are residents of Fairfax County, rather than of the City of Falls Church.

In an area known as the "Halstead Development," the location of the City's water lines interferes with construction of residential units. The developer wants to move the City's water lines, bearing the cost itself, and ensuring no adverse effect on service. Municipal authorities routinely consent to having their easements moved in the interests of permitting additional development, so long as it does not interfere with services and is done at no cost to them.

The City has refused to allow the move unless the developer promises to connect the development exclusively to the City's water system. The developer would rather connect to the Water Authority's system because doing so permits them to pay less for the service. The Water Authority stands to lose about $7 million in assorted service fees and charges if the developer is forced to connect to the City's system. In addition to refusing to cooperate with reasonable requests to relocate water lines unless the developer agrees to forego service from the Water Authority, the City has told citizens and businesses in the area that it has the exclusive right to provide water to them and has threatened them with civil or criminal sanctions if they attempt to connect to the Water Authority's system.

Although the Halstead development is the center of the instant dispute, the same issues will arise again and again as the Water Authority offers services to residents and businesses in the City's old exclusive service area. The City has no legal basis to threaten people with civil or criminal sanctions if they connect to the Water Authority's system and has no valid reason to refuse to cooperate with the routine relocation of existing easements and water

lines. The only reason they are doing so is to force residents and businesses to connect to their water system rather than the cheaper Water Authority system, resulting in a continuing stream of revenue for their general fund and lower taxes for the residents of the City.

Counts I and II of the complaint allege monopolization and attempted monopolization, in violation of the Virginia Antitrust Act. Count III was dismissed without prejudice by order of February 27, 2009. Count IV alleges tortious interference with a business expectancy. Count V alleges that the City's current practice of overcharging for municipal water service and transferring the profit to their general fund to subsidize other services in the City of Falls Church constitutes an unconstitutional extra-territorial tax.

The Water Authority seeks an injunction to prevent the City from threatening people and from using its existing easements as a weapon to force people to connect to its system. They further seek about $21 million in damages and a judgment that the City's current practice of overcharging for water and transferring the profit into their general fund amounts to an unconstitutional extraterritorial tax. The City demurs to all counts.

*Analysis*

A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. The Court must accept as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts. *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589 (2003). "[E]ven though a motion for judgment or a bill of complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993).

*Counts I and II: Monopolization and Attempted Monopolization under the Virginia Antitrust Act*

The City's primary argument is that the state action doctrine precludes liability for the conduct alleged here. The Court has examined the authorities cited by both sides and holds that the state action doctrine does not immunize the City from liability under the Virginia Antitrust Act. The Court further holds that nothing in the statutory provisions cited by the parties authorizes the City to engage in anti-competitive behavior in the provision of municipal utility services in a neighboring municipality without first obtaining the consent of the neighboring municipality.

As a preliminary matter, the Water Authority seeks relief under the Virginia Antitrust Act, rather than similar federal statutes. The state action doctrine applies principles of federalism to exempt state actions from liability under the *federal* antitrust laws. *Parker v. Brown*, 317 U.S. 341, 63 S. Ct. 307, 87 L. Ed. 315 (1943). Although honorable and esteemed courts cited by both parties have applied the federal doctrine to claims raised under state antitrust laws, the Virginia Supreme Court has never applied the doctrine to claims made under state law, and this Court declines to do so here. Along with a host of foreign authority, the City cites *Command Force Sec. v. City of Portsmouth*, 968 F. Supp. 1069, 1074 (E.D. Va. 1997) (citing *Reasor v. Norfolk*, 606 F. Supp. 788, 799 (E.D. Va. 1984)); and *Hillman Flying Service, Inc. v. Roanoke*, 652 F. Supp. 1142 (W.D. Va. 1987), as Virginia authority that the state action doctrine applies to claims made under the Virginia Antitrust Act. The City appears to misread these cases, which involve claims under both state and federal antitrust law, but to the extent that the cases do hold that the state action doctrine applies to claims raised under the Virginia Antitrust Act, this Court declines to follow them. Instead, the proper question is whether the City's actions are "authorized, regulated, or approved . . . by a statute of this Commonwealth. . . ." Virginia Code § 59.1-9.4(b).

The City argues that Virginia Code §§ 15.2-2109 and 15.2-2111 provide authority to engage in anticompetitive conduct. The relevant portions of those sections provide:

> Va. Code § 15.2-2109: Any locality may . . . acquire or otherwise obtain control of or . . . establish, maintain, operate, extend, and enlarge: waterworks . . . and other public utilities within or outside the limits of the locality and may acquire within or outside its limits . . . whatever land may be necessary for acquiring, locating, establishing, maintaining, operating, extending, or enlarging waterworks . . . and other public utilities, and the rights-of-way, rails, pipes, poles, conduits, or wires connected therewith, or any of the fixtures or appurtenances thereof. As required by subsection C of § 15.2-1800, this section expressly authorizes a county to acquire real property for a public use outside its boundaries.

> Va. Code § 15.2-2111: Any locality may exercise its powers to regulate . . . water service notwithstanding any anticompetitive effect. Such regulation may include the establishment of an exclusive service area for any . . . water system, including a

system owned or operated by the locality, the fixing of rates or charges for any . . . water service, and the prohibition, restriction, or regulation of competition between entities providing . . . water service.

The City argues that § 15.2-2109 authorizes them to acquire and operate waterworks outside its limits and that § 15.2-2111 authorizes them to regulate water service, notwithstanding any anticompetitive effect; *ergo,* they are authorized to operate a waterworks outside their limits, notwithstanding any anticompetitive effect.

The Water Authority argues first that the provisions are distinct and that the extraterritorial authority granted by § 15.2-2109 does not appear in § 15.2-2111. They further argue that construing the two provisions as the City does renders other sections of the statute irrelevant, most notably § 15.2-2112.

Virginia Code § 15.2-2112: Any two or more localities . . . may enter into agreements or contracts that create one or more exclusive service areas for the provision of . . . water service, that fix the rates or charges for any . . . water service provided separately or jointly by such entities, and that restrict or eliminate competition between or among such entities and any other public entity for the provision of sewage or water service.

The Water Authority argues that, if the Legislature intended to authorize the City to operate waterworks outside their geographic limits without regard to anticompetitive effect, the Legislature would not have enacted § 15.2-2112, authorizing localities to enter agreements permitting one another to do exactly that. Instead, they argue that the statute should be construed to permit the City to operate waterworks outside its geographic limits without regard to anticompetitive effect only by agreement of the locality within whose geographic limits they are operating. Because the 1959 agreement to that effect expired, and has not been renewed, the City's anticompetitive acts are not authorized by statute.

The Court finds the Water Authority's construction to be the reasonable one. It recognizes and respects each local government's right to exercise the authority granted them by the statute within their own geographic limits. It also strives to avoid wasteful and costly legal conflicts between local governments. In addition, the City's construction leads to significant difficulties in application. If the code sections the City cites authorize the City to monopolize water service in neighboring Fairfax County, what precludes

the City from monopolizing water service in Norfolk, or Richmond, or Bristol? This Court cannot recognize such a sweeping claim of authority without a clearer statement of intent from the legislature or additional guidance from the Virginia Supreme Court.

The City next argues that, even if their actions are not authorized by statute, the demurrer must be sustained because the Water Authority has not properly pleaded an antitrust violation. That argument fails because the complaint pleads particular facts, such that the City cannot mistake the nature of the claim. When a complaint is drafted so that the defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer. *CaterCorp*, 246 Va. at 24. The City's remaining arguments fail because they all rest on the assumption that the City's conduct is authorized by statute. That assumption is not true for the reasons already stated. The demurrer to Counts I and II is overruled.

## Count IV: Tortious Interference with a Business Expectancy

The elements of a claim for tortious interference with a business expectancy are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97 (1985). The City's argument focuses on the first and third elements.

The City attacks the complaint's allegation of a valid business expectancy on the grounds that the development was contingent on the City's agreeing to the relocation of its water lines. Any expectation by the Water Authority that the City would agree to permit the relocation is unreasonable because the City stands to gain nothing by offering its agreement. The Water Authority's expectation is even more unreasonable knowing that the City views any expansion of service by the Water Authority as a financial threat and that the City has told developers that it is "looking to protect its service boundaries." Defendant's Memorandum at 16. Finally, the expectation is unreasonable because the Water Authority knows that "the City has the right to provide water service without regard to its anticompetitive effects."

The City goes on to argue that, even if a valid expectancy existed, the Water Authority cannot show any breach of the agreement between the developer and the Water Authority. There is no breach because the developer

still has the ability to build on the site. They need merely redesign the development to build around the City's easements, and they can connect to whatever water supply they wish.

The City's arguments fail for three reasons. First, many of their arguments rest explicitly on the erroneous assumption that the Virginia Code authorizes them to act outside their geographic limits without regard to anticompetitive effect. Second, the allegation that the developer must either breach its agreement with the City or build significantly fewer units is a sufficient allegation of breach and of damages. Finally, the arguments related to the validity of the Water Authority's expectations rest on the Authority's knowledge of the City's naked threat to use any means at its disposal to "protect their service boundaries." This argument appears to be entirely without merit because the City's alleged means include improper means, such as falsely threatening with criminal and civil sanctions those residents who wish to connect to the Water Authority's service and misrepresenting to residents that the City has the exclusive right to provide water service. The demurrer to Count IV is overruled.

*Count V: Unconstitutionality of the City's Rates and Fees*

When the primary purpose of a legislative act is to raise revenue, the act is a tax, regardless of the name applied to it. *Marshall v. Northern Va. Transp. Auth.*, 275 Va. 419, 431, 657 S.E.2d 71 (2008). "[A] municipal ordinance setting a fee for refuse collection and disposal is not an invalid revenue-generating device solely because the fee set by the ordinance generates a surplus. The relevant inquiry . . . is whether there is a reasonable correlation between the benefit conferred and the cost exacted by the ordinance." *Mountain View Partnership v. Clifton Forge*, 256 Va. 304, 312, 504 S.E.2d 371 (1998). The Water Authority cites a number of cases that address regulatory license fees rather than service fees. *See, e.g. County Bd. of Supv'rs v. American Trailer Co.*, 193 Va. 72, 68 S.E.2d 115 (1951); *City of Va. Beach v. Virginia Rest. Ass'n*, 231 Va. 130, 341 S.E.2d 198 (1986). While these cases are informative, they do not appear to be controlling here.

The City argues that the fees charged to Fairfax County residents for water services cannot be a tax because they are in the nature of a contractual obligation and residents are under no legal obligation to hook up to or accept the services. In fact, they point out that the Water Authority contends that residents are under no obligation to connect to the City's service and are free to choose the Water Authority's service. In addition, the Virginia Supreme Court has repeatedly upheld public utility service fees against constitutional

challenges. The Water Authority counters that, in Fairfax County, residents and businesses are required by law to connect to a public water system if one is available, that, in some areas of the county, the City's service is the only one available, and that the City's fees far exceed the cost of providing the service.

While this area of the law appears to have a number of uncertainties, it is clear that whether an act is a "valid fee" or an "impermissible tax" does not depend on the label the parties apply to it. *Marshall*, 275 Va. at 419. The analysis depends not only on the immediate cost of providing services, but may also involve the retirement of debt incurred to build related infrastructure and provision for future costs. The entire analysis is further affected by judicial deference for reasonable political and legislative judgments. *See, Mountain View Partnership*, 256 Va. at 304.

None of these factors can be properly assessed on a demurrer. If, as alleged, Fairfax County residents are required by law to use the City's service and if the City overcharges residents of Fairfax County to subsidize the cost of providing other services to residents of Falls Church, this Court cannot say, as a matter of law, that their conduct is immune from constitutional challenge. The demurrer to Count V is overruled.

*Conclusion*

The demurrer is overruled in its entirety.